**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **U.S. EQUAL EMPLOYMENT**<br>**OPPORTUNITY COMMISSION** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-2032** |
| **COLA-COLA BOTTLING COMPANY**<br>**UNITED, INC.** | **SECTION: "G"(4)** |

## <u>ORDER AND REASONS</u>

This litigation involves alleged employment discrimination.[1] Before the Court is Defendant Coca-Cola Bottling Company United, Inc.'s ("Defendant") Motion to Dismiss Plaintiff's Complaint, or Alternatively Motion to Transfer Venue.[2] Defendant argues that venue is improper in the Eastern District of Louisiana, and that the Western District of Louisiana is the more convenient forum.[3] Plaintiff the U.S. Equal Employment Opportunity Commission (the "EEOC") opposes the motion, arguing that the Western District of Louisiana is not clearly more convenient.[4] Considering the motion, the opposition, the reply memorandum, the record, and the applicable law the Court denies the motion.

---

[1] Rec. Doc. 1.

[2] Rec. Doc. 10.

[3] *Id.* at 1.

[4] Rec. Doc. 18.

## I. Background

On September 29, 2025, the EEOC filed a Complaint in this Court against Defendant.[5] The Complaint states that Michael Bradley ("Mr. Bradley") was employed by Defendant as a Large Store Delivery Driver at Defendant's facilities in Lafayette, Louisiana.[6] The Complaint alleges that Mr. Bradley is a qualified individual with a disability under 42 U.S.C. § 12102.[7] Specifically, the Complaint explains that Mr. Bradley has a history of renal disease that substantially interferes with his kidney function and requires dialysis.[8] The Complaint states that Mr. Bradley worked full time and typically started work at 4:30 AM.[9]

On February 15, 2022, Mr. Bradley experienced a medical emergency which resulted in his hospitalization and a diagnosis of renal failure.[10] As a result of Mr. Bradley's hospitalization, Defendant granted Mr. Bradley unpaid leave of absence.[11] The Complaint explains that Defendant's policy is to terminate individuals who have been on leave of absence for more than six months.[12]

After Mr. Bradley's hospitalization concluded, he requested to return to work from his leave of absence on a reduced schedule that would allow him to undergo four hours of

---

[5] Rec. Doc. 1.

[6] *Id.* a 4.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

hemodialysis three days a week.[13] The Complaint alleges that Defendant denied Mr. Bradley's request to return to work on a reduced schedule because there were no light duty positions available.[14] Mr. Bradley then underwent surgery to allow him to begin peritoneal dialysis, which Mr. Bradley could do from home using a machine at night and would allow Mr. Bradley to work a full-time schedule.[15]

In or around July 2022, Mr. Bradley recovered from surgery related to the peritoneal dialysis, and Mr. Bradley's doctor released him to return to work with the medical restrictions that Mr. Bradley could work no more than eight-hour shifts starting on or after 7:00 AM and he could not lift over fifty pounds.[16] Mr. Bradley requested to return to work with these restrictions.[17] The Complaint states that this request constituted a request for accommodation.[18] In response to Mr. Bradley's request, Defendant instructed Mr. Bradley to look for positions within the company that had hours aligning with his medical restrictions.[19]

Mr. Bradley identified a Fountain Installer job that aligned with his medical restrictions.[20] The Complaint states that Mr. Bradley was qualified for the Fountain Installer position.[21] Mr.

---

[13] *Id.*

[14] *Id.*

[15] *Id.* at 4–5.

[16] *Id.* at 5.

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.* at 6.

[21] *Id.*

Bradley applied for the Fountain Installer position, and Defendant denied Mr. Bradley's request for the position without explanation.[22] The Complaint states that the person who was selected for the position did not have a disability that was known to Defendant.[23]

On August 23, 2022, Mr. Bradley was terminated.[24] The Complaint states that Defendant did not engage in an interactive process with Mr. Bradley to determine whether other accommodations were available to allow Mr. Bradley to remain employed while undergoing peritoneal dialysis.[25] The Complaint alleges that Defendant denied Mr. Bradley a reasonable accommodation when it refused to transfer him to an available position that he was qualified to perform, including the Fountain Installer position.[26] Further, the Complaint alleges that Defendant denied Mr. Bradley the Fountain Installer position because of his disability.[27] Moreover, the Complaint alleges that the unlawful employment acts, omissions, and practices complained of were intentional within the meaning of Title VII,[28] and Defendant acted with malice and/or reckless indifference to Mr. Bradley's federally protected rights.[29]

The EEOC asserts that Defendant has engaged in unlawful employment practices based on Mr. Bradley's disability in violation of the Americans with Disabilities Act by failing to

---

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.* at 7.

[27] *Id.*

[28] 42 U.S.C. § 2000e-5(g)(1).

[29] Rec. Doc. 1 at 7.

accommodate, refusing to transfer him to a job for which he was qualified, and for terminating him because of his disability.[30]

On January 26, 2026, Defendant filed the instant Motion to Dismiss Plaintiff's Complaint, or Alternatively Motion to Transfer Venue.[31] On February 10, 2026, the EEOC filed an opposition to the motion.[32] On February 16, 2026, Defendant filed a reply brief in further support of the motion.[33]

## II. Parties' Arguments

### A.    *Defendant's Arguments in Support of the Motion*

Defendant argues this case should be dismissed for improper venue or transferred to the Western District of Louisiana.[34] Defendant contends venue is improper in the Eastern District of Louisiana.[35] Defendant explains that under Title VII an action may be bought in: (1) the district in which the unlawful employment practice is alleged to have been committed; (2) the district in which the employment records relevant to such practice are maintained and administered; or (3) the district in which the aggrieved person would have worked but for the alleged unlawful employment practice.[36] Defendant states that Congress imposed an express limitation providing that, if the respondent is not found within any such district, an action may be filed in the judicial

---

[30] *Id.*

[31] Rec. Doc. 10.

[32] Rec. Doc. 18.

[33] Rec. Doc. 19.

[34] Rec. Doc. 10 at 3.

[35] Rec. Doc. 10-4 at 4.

[36] *Id.* at 4–5.

district in which the respondent has its principal office.[37] Defendant avers that use of the respondent's principal office is only a residual option when the defendant cannot be found in any of the three primary districts.[38] Defendant contends that a plain reading of the venue provision in 42 U.S.C.§ 2000e-5(f)(3) makes clear that Congress did not grant plaintiffs unfettered discretion to file suit in any judicial district of their choosing.[39] Defendant states that its principal office is located in Baton Rouge, Louisiana, and falls within the geographical boundaries of the Middle District of Louisiana.[40] Defendant asserts there is no factual nexus between this case and the Eastern District of Louisiana.[41] Defendant contends that the parties, witnesses, employment decisions, and records are all located outside of the Eastern District of Louisiana.[42] Defendant avers that allowing venue in the Eastern District of Louisiana would be improper.[43]

Alternatively, if the Court finds that the current venue is proper, Defendant argues that this case should be transferred to the Western District of Louisiana, Lafayette Division for the convenience of the parties and witnesses and in the interest of justice.[44] Defendant contends that Lafayette is the place where the employment actions at issue occurred, where relevant employment documents were kept and maintained, and where Mr. Bradley would otherwise be purportedly

---

[37] *Id.* at 5.

[38] *Id.*

[39] *Id.*

[40] *Id.* at 6.

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *Id.* at 8.

working had he not been terminated.[45] Defendant maintains that the Eastern District is not convenient for any party or witness, other than the EEOC.[46]

Addressing the private interest factors,[47] first, Defendant argues that all employment records related to the EEOC's claims are located outside of the Eastern District of Louisiana.[48] Next, Defendant contends that non-party witnesses located in Lafayette are outside of the Court's subpoena power, and trial subpoenas for these witnesses to travel more than 100 miles would be subject to motions to quash.[49] Third, as it relates to cost of attendance for willing witnesses, Defendant states that the drive from Lafayette to the Eastern District of Louisiana is 136 miles, which weighs in favor of transfer.[50] Fourth, Defendant avers that transfer of this matter will assist in making the trial easy, expeditious, and inexpensive.[51]

Addressing the public interest factors,[52] first, Defendant argues that the administrative difficulties flowing from court congestion weighs in favor of transfer to the Western District of

---

[45] *Id.*

[46] *Id.* at 8–9.

[47] "The private interest factors to be considered include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *In re: Volkswagen of America Inc. ("Volkswagen II")*, 545 F.3d 304, 315 (5th Cir. 2008).

[48] Rec. Doc. 10-4 at 9.

[49] *Id.* at 10.

[50] *Id.* at 10–11.

[51] *Id.* at 11.

[52] "The public interest factors to be considered in the context of a motion to transfer are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *In re: Volkswagen of America Inc.,* 545 F.3d at 315.

Louisiana because the average time from case filing to termination is four times shorter than that of the Eastern District of Louisiana.[53] Next, Defendant contends that this case has no connection whatsoever to the Eastern District of Louisiana, other than the location of counsel for the EEOC.[54] As to the third and fourth factors, Defendant avers that these factors are neutral.[55] Defendant asserts that it has shown good cause that the Western District of Louisiana is a more convenient venue.[56]

### B.    The EEOC's Argument in Opposition to the Motion

In opposition to the motion, the EEOC argues that venue is proper in the Eastern District of Louisiana because the unlawful employment practices were committed in the State of Louisiana, and the plain language of Title VII's special venue statute allows the action to be brought in "any judicial district in the State in which the unlawful employment practice is alleged to have been committed…"[57] Thus, the EEOC avers that venue is proper and the case should not be dismissed.[58]

The EEOC further argues that this case should not be transferred to the Western District of Louisiana based on forum non conveniens because Defendant has not met its burden of showing that the Western District of Louisiana is a clearly more convenient forum.[59] The EEOC contends that it is located here in New Orleans and the underlying charge of discrimination was investigated

---

[53] Rec. Doc. 10-4 at 12.

[54] Id.

[55] Id.

[56] Id. at 13.

[57] Rec. Doc. 18 at 2.

[58] Id. at 3.

[59] Id.

by the EEOC's New Orleans field office.[60] The EEOC explains that the witnesses are located in Baton Rouge and Monroe, Louisiana and Birmingham, Alabama, as such, Defendant's proposed venue in Lafayette is not clearly more convenient.[61]

The EEOC argues that it is not required to file in the district where the alleged discrimination occurred.[62] The EEOC contends that the Fifth Circuit has assumed that the venue provision is statewide, and venue is proper in any judicial district in Louisiana.[63] The EEOC avers that Defendant was "found" in the Eastern District of Louisiana because it executed a waiver of service here and was subject to personal jurisdiction here.[64] The EEOC maintains that venue is proper in the Eastern District of Louisiana.[65]

The EEOC avers that Defendant has not identified any specific piece of evidence or any witnesses, other than the charging party, located in the Western District of Louisiana.[66] While Defendant contends that the sources of proof factor favors transfer, the EEOC argues that Defendant only identified unspecified employment documents without stating the content of those documents, their relevance, or where the documents are located.[67] The EEOC points out that Defendant admits that many of its human resources functions are conducted in Baton Rouge, which

---

[60] *Id.*

[61] *Id.*

[62] *Id.* at 7.

[63] *Id.* at 7–8.

[64] *Id.* at 9–10.

[65] *Id.* at 11.

[66] *Id.*

[67] *Id.* at 14.

is not located in the Western District of Louisiana.[68] On the other hand, the EEOC submits that several key documents are located in New Orleans, including the charge of discrimination, statements by Defendant in response to the charge and requests for information, Mr. Bradley's personnel file, relevant job descriptions, employment policies, witness notes, and correspondence between Mr. Bradley and Defendant regarding the underlying unlawful practices.[69]

As it relates to the availability of compulsory process to secure the attendance of witnesses, the EEOC argues that Defendant has not identified a single unwilling witness who would not be subject to subpoena power in this District, or one whom it lacks power to compel to testify.[70] The EEOC explains that party witnesses, such as Mr. Bradley and other employees, would be subject to compulsory process in New Orleans if identified as a witness.[71] The EEOC posits that this factor warrants denial of the motion.[72]

As it relates to the cost of attendance for willing witnesses, the EEOC contends that Defendant has not met its burden of showing that there are any willing non-party witnesses who are likely to incur substantial costs by attending trial in New Orleans.[73] The EEOC explains that Mr. Bradley will not bear the costs of attending trial in New Orleans because the EEOC will cover his costs.[74] As it relates to the witness located in Birmingham, the EEOC explains that New

---

[68] *Id.*

[69] *Id.* at 15.

[70] *Id.*

[71] *Id.* at 16–17.

[72] *Id.*

[73] *Id.* at 18–19.

[74] *Id.* at 19–20.

Orleans has a major airport and is closer to Birmingham than Lafayette.[75] While Defendant argues that the Western District of Louisiana is less congested than the Eastern District of Louisiana, the EEOC points out that the median time interval from filing to trial in civil cases was over 13 months faster in the Eastern District of Louisiana compared to the Western District of Louisiana.[76] The EEOC contends that all of the private interest and public interest factors support denial of the motion.[77]

### C.    *Defendant's Arguments in Further Support of the Motion*

Defendant maintains that this suit has no meaningful connection to the Eastern District of Louisiana.[78] Defendant rejects the EEOC's contention that they could bring suit in any judicial district in Louisiana.[79] Defendant avers that the Eastern District of Louisiana is the least convenient and the least connected choice of forum available.[80] Defendant contends that the only documents maintained in New Orleans are those contained in the EEOC's investigative file.[81] Defendant asserts that no witnesses, willing or unwilling, are located in the Eastern District of Louisiana.[82] While the EEOC states that the time from filing to trial is shorter in the Eastern District of

---

[75] *Id.* at 20.

[76] *Id.* at 23.

[77] *Id.* at 25.

[78] Rec. Doc. 19 at 1.

[79] *Id.* at 3.

[80] *Id.* at 4.

[81] *Id.* at 5.

[82] *Id.* at 6.

Louisiana, Defendant argues this one statistic is not determinative.[83] Defendant avers that the Western District of Louisiana has a vested interest in deciding this lawsuit because Lafayette is where Mr. Bradley resides, where Mr. Bradley was employed, and where the allegedly unlawful events took place.[84] Therefore, Defendant asserts that this matter should be dismissed or alternatively, transferred to the Western District of Louisiana, Lafayette Division.[85]

### III. Legal Standard

Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a) provide for dismissal or transfer of an action that has been brought in an improper venue.[86] "A trial court has broad discretion in ruling on motions to transfer venue, and its decision will be upheld absent an abuse of discretion."[8] "For Title VII claims, venue is proper in only those districts which comport with 42 U.S.C. § 2000e-5(f)(3)."[9] Section 2000e-5(f)(3) provides that venue is proper in all of the following:

> (1) any judicial district in the State in which the unlawful employment practice is alleged to have been committed; (2) the judicial district in which the employment records relevant to such practice are maintained and administered; and (3) the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice. Additionally, if the respondent is not found within any of the above-mentioned districts, § 2000e-5(f)(3) provides that venue is proper in the judicial district in which the respondent has its principal office.[87]

---

[83] *Id.* at 8.

[84] *Id.* at 9.

[85] *Id.* at 10.

[86] *Emelike v. L–3 Communications Corp.,* 2013 WL 1890289, at *1 (N.D. Tex. May 7, 2013) (citing *In re Atl. Marine Const. Co., Inc.,* 701 F.3d 736, 739 (5th Cir.2012)).

[87] 42 U.S.C. § 2000e-5(f)(3).

"Aside from § 2000e-5(f)(3), the general venue provisions under 28 U.S.C. §§ 1404(a) and 1406 are also applicable and should be considered in Title VII cases."[88]

In the event a case is filed in the wrong district, then pursuant to 28 U.S.C. § 1406, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."[89] "If transfer is warranted, courts can consider similar factors to those connected to a traditional motion to transfer pursuant to 28 U.S.C. § 1404(a)."[90]

"Section 1404(a) of Title 28 allows the Court in its discretion to transfer venue to another district or division, '[f]or the convenience of parties and witnesses, in the interest of justice,' where the action might have been brought."[91] "'When the movant demonstrates that the transferee venue is clearly more convenient' than the venue chosen by the plaintiff, 'it has shown good cause and the district court should grant the transfer.'"[92]

"In determining whether to transfer a case, the court must consider both private interest factors and public interest factors after first considering whether the judicial district to which

---

[88] *Lozada v. Regal Ware, Inc.*, No. EP-07-CV-448-PRM, 2008 WL 4328011, at *2 (W.D. Tex. Sept. 15, 2008) (citing *In re Horseshoe Entertainment,* 337 F.3d 429, 443 (5th Cir.2003)).

[89] 28 U.S.C. § 1406(a).

[90] *Walters v. T.H. Hill Assocs., Inc.*, No. 3:12–CV–00723–BAJ–SCR, 2013 WL 5375488, at *2 (M.D. La. Sept. 19, 2013).

[91] *Norman v. H & E Equip. Servs., Inc.*, No. 3:14–CV–367, 2015 WL 1281989, at *5 (M.D. La. Mar. 20, 2015) (quoting 28 U.S.C. § 1404(a)); *Hollis v. Fla. State Univ.,* 259 F.3d 1295, 1300 (11th Cir. 2001)).

[92] *Coleman v. Trican Well Serv., L.P.*, No. EP–14–CV–417–PRM, 2015 WL 865153, at *1 (W.D. Tex. Feb. 27, 2015) (quoting *Volkswagen II,* 545 F.3d at 315).

transfer is sought would have been a district in which the claim could have been filed."[93] "These factors are 'not necessarily exhaustive or exclusive' and 'none can be said to be of dispositive weight.'"[94]

The private interest factors that a court must consider are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."[95] The public factors to be considered are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."[96]

The party seeking transfer of venue must show good cause for the transfer.[97] The moving party must show that the transferee venue is "clearly more convenient" than the transferor venue.[98] The plaintiff's choice of venue is generally not a factor in this analysis, but rather contributes to

---

[93] *Saurage v. Rave Reviews Cinemas, LLC*, No. 07-528-JJB-CN, 2008 WL 205342, at *2 (M.D. La. Jan. 23, 2008) (citing *In re Volkswagen AG ("Volkswagen I")*, 371 F.3d 201, 203 (5th Cir. 2004)).

[94] *Vivint Louisiana, LLC v. City of Shreveport*, No. 14–00617–BAJ–RLB, 2015 WL 1456216, at *3 (M.D. La. Mar. 23, 2015) (quoting *Volkswagen II*, 545 F.3d at 315).

[95] *Volkswagen II*, 545 F.3d at 315.

[96] *Id.*

[97] *Id.*

[98] *Id.*

14

the defendant's burden to show good cause for the transfer.[99] However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."[100] And while the multi-factor analysis is informative, ultimately, "the district court has broad discretion in deciding whether to order a transfer."[101] "[A] district court abuses its discretion by denying transfer when 'not a single relevant factor favors the [plaintiff's] chosen venue.'"[102] A district court also "abuses its discretion by denying a motion to transfer when 'virtually all of the events and witnesses regarding the case ... are in the transferee forum.'"[103]

### IV. Analysis

Defendant argues that this matter should be dismissed because venue is improper in the Eastern District of Louisiana. Alternatively, if the Court finds that venue is proper in the Eastern District of Louisiana, Defendant argues that this matter should be transferred to the Western District of Louisiana, Lafayette Division, for convenience of the parties and witnesses and in the interest of justice. The Court addresses each argument in turn.

### A.    *Whether Venue is Proper in the Eastern District of Louisiana*

Defendant argues that venue is improper in the Eastern District of Louisiana. The parties dispute the proper interpretation of the first prong of Section 2000e-5(f)(3)(1). This provision

---

[99] *Volkswagen II*, 545 F.3d at 315 n.10 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege.").

[100] *Id.* at 315.

[101] *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)).

[102] *In re TikTok*, *Inc.,* 85 F.4th 352, 358 (quoting *Volkswagen II*, 545 F.3d at 318).

[103] *Id.* at 366 (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013)).

states that venue is appropriate in "any judicial district in the State in which the unlawful

employment practice is alleged to have been committed." Defendant contends that this provision

should not be interpreted broadly to allow a plaintiff unfettered discretion to select any district

within the state. The EEOC, by contrast, asserts that courts in this circuit have consistently found

the statute to permit venue in any judicial district within the state where the unlawful employment

practice occurred. The Court finds the EEOC's position persuasive.

In *Horseshoe I*,[104] the Fifth Circuit concluded that the district court erred in construing the

specialized venue provision so broadly as to permit venue in any judicial district within a state

where the alleged discriminatory conduct occurred.[105] Instead, the *Horseshoe I* court reasoned that

Congress intended employment discrimination actions to be litigated in a judicial district that had

"direct and immediate" connection with the parties, events, and evidence giving rise to the cause

of action.[106] However, approximately one year later in *Horseshoe II*, the Fifth Circuit vacated its

prior opinion in *Horseshoe I*, and expressly declined to address the scope of § 2000e-5(f)(3).[107] In

the wake of *Horseshoe II*, several district courts within the Fifth Circuit have elected to construe

the statute broadly.[108] Adopting that approach and in the absence of controlling Fifth Circuit

---

[104] *In re Horseshoe Ent.*, 305 F.3d 354 (5th Cir. 2002) (opinion superseded by *In re Horseshoe Ent. ("Horseshoe II")*, 337 F.3d 429 (5th Cir. 2003)).

[105] *Id.* at 359.

[106] *Id.*

[107] *Horseshoe II,* 337 F.3d at 435.

[108] *See Coleman v. Trican Well Serv., L.P.*, No. EP–14–CV–417–PRM, 2015 WL 865153, at *2 (W.D. Tex. Feb. 27, 2015) ("Pursuant to Title VII's venue provision, venue is proper in any district in the state of Texas because the unlawful employment practices—discrimination and retaliation—occurred in Texas."); *Chapman v. Dell, Inc.*, No. EP–09–CV–7–KC, 2009 WL 1024635, at *2 (W.D. Tex. Apr. 15, 2009)("Under the plain language of Title VII, then, venue is proper in any district in Texas."); *Yett v. Peters*, No. 4:06cv473, 2008 WL 177873, at *2 (E.D. Tex. Jan. 18, 2008) ("While the Fifth Circuit has expressed some concern with such a broad reading of the statute [42 U.S.C. § 2000e-(f)(h)(5) ], there is no authority holding that it should not be read as it is written-broadly."); *Puenta v. Ridge*,

precedent adopting a narrow construction of the first prong of Section2000e-5(f)(3), the Court finds that venue is appropriate in any district in Louisiana because the unlawful employment practices occurred here. As such, venue is proper in the Eastern District of Louisiana.

**B.    *Whether the Western District of Louisiana is Clearly More Convenient***

Having found venue to be proper in the Eastern District of Louisiana, the Court turns its attention to whether this action should be transferred to the Western District of Louisiana pursuant to 28 U.S.C. § 1404. "The threshold question in applying the provisions of § 1404(a) is whether the suit could have been brought in the proposed transferee district."[109] If the answer to that question is yes, then a court must consider a variety of public and private interest factors to determine whether the movant's choice of forum is "clearly more convenient."[110]

Title VII clearly provides for venue in the Western District of Louisiana because: (1) it is a judicial district in the state where the unlawful employment practices are alleged to have been committed; and (2) it is the judicial district in which Mr. Bradley would have worked but for the unlawful practices.[111] Because the EEOC could have originally filed suit in the Western District of Louisiana, the preliminary inquiry is satisfied.

---

No. Civ.A. M-04-267, 2005 WL 1653017, at *2 (S.D. Tex. July 6, 2005)("the statute [42 U.S.C. § 2000e-(f)(h)(5) ] clearly provides that a Title VII suit may be brought in any judicial district in the state in which the unlawful employment practice is alleged to have been committed."); *Wallace v. Bd. Of Supervisors for the Univ. of La. Sys.*, No. 14–657–SDD–RLB, 2015 WL 1970514, at *2 (M.D. La. Apr. 30, 2015); *Broussard v. First Tower Loan, LLC*, 135 F. Supp. 540 (E.D. La. Oct. 2, 2015).

[109] *Volkswagen I*, 371 F.3d at 203.

[110] *Id.*

[111] *See* 42 U.S.C. § 2000e-5(f)(3).

### 1.      Private Interest Factors

#### a.      Access to Sources of Proof

This factor "focuses on the location of 'documents and physical evidence relating to the [case].'"[112] This relative ease of access to sources of proof is still a relevant part of the transfer analysis despite technological advances that have made transporting large volumes of documents across the country more convenient.[113] "This factor weighs in favor of transfer where the current district lacks any evidence relating to the case."[114] Typically, documents concerning corporate parties are located at the corporation's headquarters.[115]

Defendant argues that "all employment records related to the EEOC's claims regarding Mr. Bradley's employment, are located at [Defendant's] facilities outside of the Eastern District."[116] Defendant attaches a declaration from Beth Ingram, the West Region Human Resources Director for Defendant, who attested that "[m]any of the Human Resources functions for the [Defendant's] facilities located in Lafayette, Louisiana are conducted out of [Defendant's] principal place of business…located at 9696 Plank Road in Baton Rouge, Louisiana."[117] The EEOC contends that several key documents are located in New Orleans, including the charge of discrimination, statements by Defendant in response to the charge and requests for information, Mr. Bradley's personnel file, relevant job descriptions, employment policies, witness notes, and

---

[112] *TikTok*, 85 F.4th at 358.

[113] *Volkswagen II*, 545 F.3d at 316.

[114] *TikTok*, 85 F.4th at 358.

[115] *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010).

[116] Rec. Doc. 10-4 at 9.

[117] Rec. Doc. 10-1.

correspondence between Mr. Bradley and Defendant regarding the underlying unlawful practices.[118]

Defendant's human resource functions are conducted in Baton Rouge, which is located in the Middle District of Louisiana. Defendant has not identified any documents or evidence located in the Western District of Louisiana. Further, it cannot be said that the current district lacks any evidence related to the case based on the EEOC's identification of several documents located in New Orleans. Because relevant documents are dispersed across multiple districts and Defendant has not demonstrated that access to records or evidence would be meaningfully more convenient in the Western District of Louisiana, this factor does not weigh in favor of transfer. At most, it is neutral.

### b.    Availability of Compulsory Process to Secure the Attendance of Witnesses

The second private interest factor considers the availability of compulsory process to secure the attendance of non-party witnesses. This factor "receives less weight when it has not been alleged or shown that any witness would be unwilling to testify."[119] A venue that has "absolute subpoena power for both deposition and trial" is favored over one that does not.[120] "The court gives more weight to specifically identified witnesses, and less weight to vague assertions that witnesses are likely to be found in a particular forum."[121] Rule 45 empowers courts with

---

[118] Rec. Doc. 18 at 15.

[119] *In re Planned Parenthood Fed. Of Am., Inc.*, 52 F.4th 625, 630–31 (5th Cir. 2022).

[120] *Volkswagon II*, 545 F.3d at 315.

[121] *Eight One Two, LLC v. Purdue Pharma, L.P.*, No. 3:13–CV–2981–K, 2014 WL 7740476, at *3 (N.D. Tex. May 16, 2014).

subpoena power to command the appearance of nonparty witnesses for depositions or trial: "(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense."[122] "Current employees of a party are considered to be willing witnesses whose testimony can be presented without reliance upon subpoena power, and their locations are not persuasive in the court's analysis of this factor."[123]

Here, Defendant does not allege or show that any non-party witnesses would be unwilling to testify.[124] In the absence of such a showing, the Court finds that this factor is neutral.

### c.      Cost of Attendance

The cost of attendance for willing witnesses is an important factor in determining whether to transfer venue.[125] While the cost of attendance for party witnesses can be considered, the cost of attendance for nonparty witnesses is entitled to greater weight.[126] When the distance between the existing venue and proposed transferee venue is more than 100 miles, the inconvenience to the

---

[122] Fed. R. Civ. P. 45.

[123] *Eight One Two*, at *3 (citing *Rosemond v. United Airlines, Inc.*, No. H–13–2190, 2014 WL 1338690, *3 (S.D. Tex. 2014)

[124] *See TikTok*, 85 F.4th at 360.

[125] *Modern Am. Recycling Servs., Inc. v. Dunavant,* No. 10–3153; 2011 WL 1303136, *6 (E.D. La. March 31, 2011).

[126] *MGT Gaming,* 978 F.Supp.2d at 671; *Remmers v. United States,* 2009 WL 3617597, at *5 (E.D. Tex. Oct. 28, 2009); *Minka Lighting, Inc. v. Trans Globe Imports, Inc.,* 2003 WL 21251684, *2 (N.D. Tex. May 23, 2003).

witnesses increases in direct proportion to the additional distance to be traveled.[127] The moving party must "specifically identify the key witnesses and outline the substance of their testimony."[128]

Defendant contends that many witnesses are "located either in and around Lafayette, Louisiana, or elsewhere outside of the Eastern District."[129] Defendant submits that the distance between the Western District of Louisiana, Lafayette Division and the Eastern District of Louisiana is approximately 136 miles.[130] Defendant fails to identify any nonparty witnesses who would be inconvenienced by trial in the Eastern District of Louisiana, nor does Defendant address the substance of their testimony. Thus, this factor is neutral.

### d.        All Other Practical Problems

The Court "considers all other practical problems that make trial of a case easy, expeditious, and inexpensive."[131] Defendant contends that transfer will make this case easy, expeditious, and inexpensive in comparison to the lawsuit remaining in this Court. Because Defendant has failed to demonstrate any meaningful practical advantages associated with transfer, the Court finds that this factor is neutral.

---

[127] *Volkswagen II*, 545 F.3d at 317.

[128] *Tegrity Contractors, Inc. v. The Spectra Grp., Inc.*, No. 12–2555, 2013 WL 654924, at *4 (E.D. La. Feb. 21, 2013); *Modern Am. Recycling Servs., Inc. v. Stephen Michael Dunavant, et al.*, No. 10–3153, 2011 WL 1303136, *6 (E.D. La. Mar. 31, 2011); *Cypress Drilling, Inc. v. Griffin*, No. 06–0556, 2006 WL 2177992, at *2 (W.D. La. July 31, 2006); *Caraljo Music, Inc. v. Malaco, Inc.,* No. 87–3599, 1988 WL 32943, at *2 (E.D. La. Apr. 5, 1988).

[129] Rec. Doc. 10-4 at 11.

[130] *Id.*

[131] *TikTok*, 85 F.4th at 362 (quoting *Volkswagen II*, 545 F.3d at 315).

## 2.      Public Interest Factors

### a.      Congestion

The first public interest factor concerns "whether there is an appreciable difference in docket congestion between the two forums."[132] As part of the transfer analysis, courts will consider the time between the filing of a suit and trial.[133] However, this factor is not entitled to much weight because it is the most speculative, and this factor alone should not outweigh other factors.[134]

Defendant argues that cases proceed to disposition more quickly in the Western District of Louisiana, while the EEOC points to statistics showing that the median time from filing to trial is shorter in the Eastern District of Louisiana. Because courts assess congestion by examining the time from filing to trial, the Court finds the EEOC's argument more persuasive. The data provided by the EEOC indicates that civil cases reach trial more quickly in the Eastern District of Louisiana than in the Western District of Louisiana.[135] Thus, this factor weighs in favor of maintaining venue in the Eastern District of Louisiana.

### b.      Local Interest

The second public interest factor is the local interest in having localized interests decided at home.[136] "Important considerations include the location of the injury, witnesses, and the

---

[132] *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963).

[133] *In re Genentech*, 566 F.3d 1338, 1347 (Fed. Cir. 2009).

[134] *Id*.; *Versata Software, Inc. v. Internet Brands, Inc*., No. 08–313, 2009 WL 3161370 at *4 (E.D. Tex. Sept. 30, 2009).

[135] Rec. Doc. 18-5 at 5.

[136] *Volkswagen II*, 545 F.3d at 315.

[p]laintiff's residence."[137] This factor recognizes that "jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."[138]

Defendant explains that Mr. Bradley lives and worked in Lafayette, the alleged unlawful employment practices occurred there, and many of the anticipated witnesses are located in Lafayette.[139] However, Defendant admits that many of its human resources functions are conducted in Baton Rouge, which is located in the Middle District of Louisiana. Therefore, this factor is neutral because the events giving rise to this action occurred across multiple districts in Louisiana.

### c.    Familiarity of the Forum and Conflicts of Law

Both parties agree that the last two public interest factors are neutral because both the Eastern District and the Western District of Louisiana are familiar with federal discrimination laws. The Court agrees that these factors are neutral.

### V. Conclusion

Having considered the private and public interest factors, the Court finds that Defendant has not met its burden of demonstrating that transfer to the Western District of Louisiana is clearly more convenient. The Court finds that the relative administrative difficulties flowing from court congestion weighs against transfer. While this factor is often afforded limited weight, the record reflects that civil cases in the Eastern District of Louisiana generally proceed to resolution more

---

[137] *Def. Distributed v. Bruck*, 30 F.4th 413, 435 (5th Cir. 2022) (citations omitted).

[138] *Volkswagen I*, 371 F.3d at 206 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)).

[139] Rec. Doc. 10-4 at 12.

quickly than in the Western District. Because a transfer would likely delay the prompt resolution of these issues, this factor weighs in favor of maintaining venue in the Eastern District.

The remaining private and public interest factors are largely neutral. Defendant has not identified any unavailable witnesses, significant evidentiary burdens, or other practical obstacles that would render trial in this District substantially less convenient. As a result, the Court concludes that Defendant has failed to demonstrate that the Western District is clearly more convenient than Plaintiff's chosen forum. As stated herein, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."[140] And while the multi-factor analysis is informative, ultimately, "the district court has broad discretion in deciding whether to order a transfer."[141] For these reasons, the Court finds that transfer is not warranted under 28 U.S.C. § 1404(a).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss and/or Motion to Transfer Venue is **DENIED.**

**NEW ORLEANS, LOUISIANA,** this __3rd__ day of June, 2026.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[140] *Volkswagen II*, 545 F.3d at 315.

[141] *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)).